768 So.2d 728 (2000)
STATE of Louisiana, Appellee,
v.
Joseph D. WILLIAMS, Appellant.
No. 33,881-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2000.
Rehearing Denied October 26, 2000.
*730 George W. Britton, III, Counsel for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, George D. Ross, Assistant District Attorney, Counsel for Appellee.
Before BROWN, GASKINS and DREW, JJ.
BROWN, J.,
A jury, by a vote of 11 to 1, found defendant, Joseph Williams, guilty of distribution of cocaine, conspiracy to distribute cocaine and possession of cocaine. On the possession count, the trial court granted a post-verdict motion for acquittal. Concurrent hard labor sentences of ten years and five years respectively were imposed on the distribution and conspiracy counts. On appeal, defendant challenges the sufficiency of the evidence and contends that the trial court erred in allowing into evidence an out-of-court statement made by an alleged co-conspirator. Finding no error, however, we affirm.

Discussion

Trial Testimony
Tensas Parish Sheriff's Deputy Dana Ashley McGee testified that the instant charges arose out of an undercover narcotics operation which had targeted James Sievers. On January 27, 1999, Dy. McGee, who had already made two buys of marijuana from Sievers, paged him to arrange to purchase cocaine. A man who said that his name was "JoJo" returned the page. Caller ID showed the name, Joseph Williams, and a telephone number; however, no address appeared and apparently the police did not cross-check the phone number with an address. Dy. McGee asked JoJo whether she could buy an "eight ball" of cocaine from Sievers. JoJo, who said that he was Sievers' roommate, stated that he could get the cocaine for her. This was the second time Williams' name appeared on the caller ID in response to a page by Dy. McGee to Sievers.
Deputy McGee was instructed by her supervisor to make the deal with Sievers, the target of the investigation, and after a third page, Sievers agreed to meet Dy. McGee at a Citgo station on Thomas Road. A short time later, Williams, who was driving Sievers' 1990 white Cadillac Seville, and Sievers arrived at the Citgo station. Sievers got out of the vehicle and got into Dy. McGee's truck and gave her three baggies containing powder cocaine. In return, Dy. McGee paid Sievers $350. A surveillance team then apprehended McGee, Sievers and Williams.[1]
On cross-examination, Dy. McGee testified that this particular transaction was her third buy from Sievers and acknowledged that she had no contact with Williams on the other two transactions. Dy. McGee stated that she never went to Sievers' residence, that she had been given Sievers' pager number by Sievers and that Sievers had the cocaine concealed on his person when he entered her vehicle.
Ouachita Parish Deputy James Purvis testified that he participated in the operation which led to the arrest of James Sievers and Joseph Williams. Sgt. Purvis stated that he was involved in a sporadic, rolling surveillance on Sievers' residence. When his team saw Sievers' white Cadillac at the apartment, they "sat on it." Dy. McGee then made her arrangement with Sievers, i.e., the third call setting up the cocaine purchase at the Citgo station. The surveillance team saw Williams and Sievers leave the apartment, get into the Cadillac and drive to the Citgo station.
After the arrest, Williams made no statements; however, Sievers admitted that he had more drugs in the apartment and consented to a search. The search disclosed several bags of cocaine and related *731 paraphernalia, all of which were found in one upstairs bedroom.
On cross-examination, Sgt. Purvis testified that when the police began surveillance of Sievers' apartment, only one car, the white Cadillac, was there. Sgt. Purvis stated that the lease and the electricity were in Sievers' name. Sgt. Purvis saw Williams exit the apartment with Sievers and travel to the Citgo station to meet Dy. McGee. When booked, Williams gave a different address than that of Sievers' apartment.
Sgt. Purvis was told by Dy. McGee of her telephone conversation with JoJo. Because Sievers was the target of their investigation, Sgt. Purvis told Dy. McGee to call back later and speak to Sievers. It was pursuant to Sgt. Purvis's instructions that the deal was arranged with Sievers.
Ouachita Parish Deputy Mike Rowland testified that he took part in the investigation and corroborated Sgt. Purvis's testimony. Sgt. Rowland also stated that he knew Joseph Williams as JoJo. On cross-examination, when defense counsel asked, "Do you have any information ... that [Williams] lived in the apartment where these particular items of drugs were seized?" Sgt. Rowland replied, "Sievers' testimony. Advised that he ..." At that point, defense counsel objected. The trial court found that the defense attorney's question was open-ended and overruled the objection. Sgt. Rowland then completed his answer; he stated, "Mr. Sievers advised that JoJo did live there and that he knew the drugs were in his apartment."
Susan Rutledge, a forensic chemist at the North Louisiana Crime Lab, testified as to how she determined that the white powder in the bags Sievers delivered to Dy. McGee was cocaine.
The state rested. The defense recalled Sgt. Purvis and rested.

Sufficiency of the Evidence
Louisiana's Constitution prohibits the review of facts in a criminal case. La. Const. Art. V, §§ 5(C) & 10(B). In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the U.S. Supreme Court found that due process requires that a reviewing court look at the probative character of the evidence to insure that a jury could have reasonably concluded that all the elements of an offense have been proven beyond a reasonable doubt.[2]Jackson v. Virginia, supra, however, admonishes a reviewing court not to substitute its view of the facts for that of the jury but to consider all the evidence in the light most advantageous to maintaining the verdict. It is solely the province of the jury to resolve conflicting inferences.
In this case, defendant seeks to have this court expand the federally mandated review standards for sufficiency. Citing Louisiana's circumstantial evidence rule, La. R.S. 15:438, defendant asks this reviewing court to examine conflicting inferences and rule out every hypothesis except that of guilty before affirming the jury's verdict. Such a review would usurp the role of the jury and substitute our view of the facts. In Jackson v. Virginia, the defendant was convicted of first degree murder. The Supreme Court's review of the record, in the light most favorable to the prosecution, showed that a reasonable juror could have found the defendant guilty beyond a reasonable doubt. The concluding paragraph in this seminal case is instructive:
Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the court has rejected in the past. (Cite omitted). We decline to adopt it today. Under the standard *732 established in this opinion as necessary to preserve the due process protection recognized in Winship, a federal habeas corpus court faced with a record of historical facts that support conflicting inferences, must presumeeven if it does not appear in the recordthat the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. Applying these criteria, we hold that a rational trier of fact could have found that the petitioner committed murder in the first degree under Virginia law. (Emphasis added).
Id., 443 U.S. 307, 325, 99 S.Ct. 2781, 2792-3, 61 L.Ed.2d 560, 577.
The unadorned Jackson standard adopted by article 821 of Louisiana's Code of Criminal Procedure affords deference to the jury's factual findings. This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. Art. V, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The review mandated by Jackson is the same whether the record includes direct evidence or is based solely on circumstantial evidence. State v. Sutton, 436 So.2d 471 (La.1983).
Distribution of a controlled dangerous substance is the knowing or intentional distribution of a listed substance. La. R.S. 40:967. Cocaine is a Schedule II CDS. La. R.S. 40:964. Distribution means to deliver a CDS by, among other things, physical delivery. La. R.S. 40:961(14).
All persons concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, who aid and abet in its commission are principals. La. R.S. 14:24. Criminal conspiracy is defined by La. R.S. 14:26 as an agreement or combination between two or more persons for the specific purpose of committing any crime when one or more of such parties does an act in furtherance of the object of the agreement or combination. The foundation of the offense is the combination of two minds for an unlawful purpose. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950); State v. Joles, 485 So.2d 212 (La. App. 2d Cir.1986).
Whether the historical facts support conflicting inferences in this case is not the issue. The direct evidence of Williams' presence at the scene, together with the corroborating surveillance and telephone conversations, reasonably supports the jury's conclusion of his culpability. It was reasonable for the jury to conclude that Williams knew of the drugs in the apartment, knew of Sievers' drug trafficking activity, related that he (Williams) could obtain cocaine for Dy. McGee, knew that Sievers was going to the Citgo parking lot to engage in a drug deal and was a willing and knowledgeable participant in the drug deal. Williams' act of driving to the Citgo station constitutes an act in furtherance and makes Williams a principal to the resulting drug transaction.
This assignment of error is without merit.

Admissibility of Hearsay Statement
In this assignment of error, defendant urges that the trial court erred by allowing into evidence a hearsay statement made by James Sievers to a sheriff's deputy, elicited during defense counsel's cross-examination of that officer.
Specifically, the testimony of which defendant complains is Sgt. Rowland's answer, in response to a question posed by defense counsel, in which he noted that James Sievers had made a statement which indicated that Williams lived in the apartment in which the drugs were found.
At trial, defense counsel asked Sgt. Rowland, "Do you have any information... that [Williams] lived in the apartment where these particular items of drugs were seized?" Sgt. Rowland replied, "Sievers' testimony. Advised that he ..." At that *733 point, defense counsel objected on the ground of hearsay. This response by Sgt. Rowland was appropriate to the question asked by the defense attorney. Defendant cannot now complain. In this case, defendant's trial counsel did what all attorneys should try to avoid, he asked a question to which he did not know how his witness would respond.
Recognizing his mistake, defense counsel interrupted Sg. Rowland's answer. The court found the question to be open-ended, overruled the objection, and allowed Sgt. Rowland to complete his answer; the officer then related that "Mr. Sievers advised that JoJo did live there and that he knew the drugs were in his apartment."[3] It would have been more prudent for the trial court not to have allowed Sgt. Rowland to complete his answer, but to have advised defense counsel to rephrase his question. However, Sgt. Rowland's response, before he was interrupted by defense counsel's objection, clearly conveyed what Sievers had said. Thus, the completion of his answer caused no more harm. This assignment of error is without merit.

Error Patent Review
The sentence for distribution is illegally lenient since it does not provide that the first five years shall be without benefit as required by La. R.S. 40:967. Because the state failed to appeal, this sentencing error may not be corrected by this court, nor may we remand the matter for resentencing. State v. Fraser, 484 So.2d 122 (La.1986); State v. Moore, 26,329 (La. App.2d Cir.08/17/94), 642 So.2d 679.
We also note that the court minutes and the transcript state that defendant's sentences are to be served concurrently. On the other hand, the written judgment (which is not required, see La. C.Cr.P. art. 871) states that the sentences are to be "consecutive." The transcript controls; the sentences are to be served concurrently. See State v. Collins, 546 So.2d 1246 (La.App. 1st Cir.1989); State v. Lordi, 543 So.2d 599 (La.App. 4th Cir. 1989); State v. Johnson, 533 So.2d 1288 (La.App. 3d Cir.1988), writ denied, 563 So.2d 873 (La.1990); State v. Gilmore, 522 So.2d 658 (La.App. 5th Cir.1988).
No other error patent was noted.

Conclusion
For the foregoing reasons, defendants' convictions and sentences are affirmed.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, PEATROSS, KOSTELKA, and DREW, JJ.
Rehearing Denied.
NOTES
[1] Deputy McGee was placed into a different vehicle than Williams and Sievers and obviously not processed or prosecuted.
[2] Before Jackson v. Virginia, supra, sufficiency of evidence was reviewed as a question of law only when a defendant alleged a total absence of any factual support for the verdict. Such a "no evidence" rule had nothing to do with the type or convincing nature of the evidence.
[3] La. C.E. art. 801(D)(3)(b) provides that a statement is not hearsay if the statement is offered against a party and the statement is "a statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established." The trial court properly found that the challenged statement was not admissible hearsay under 801(D)(3)(b) because it was not made until after the conspiracy had ended and thus was not made in furtherance of the object of the conspiracy.