974 So.2d 110 (2008)
STATE of Louisiana, Appellee,
v.
Montie MONTGOMERY, Appellant.
No. 42,835-KA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*115 H. Melissa C. Sugar, Edward K. Bauman, Louisiana Appellate Project, Lake Charles, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
Before GASKINS, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
Montie Montgomery was convicted of possession of cocaine in excess of 28 grams and conspiracy to distribute cocaine. He received concurrent sentences of 28 years at hard labor on the possession charge and 14 years at hard labor on the conspiracy charge with these sentences to be served consecutively to any other sentences being served. Montgomery now appeals his convictions and sentences. We affirm.

Facts
On November 25, 2005, Lieutenant Dan Weaver of the Minden, Police Department met with confidential informant, Daran Adams, to discuss the purchase of illegal narcotics from Montgomery. Adams had known Montgomery for ten years and he contacted him by phone to set up the sale. Prior to the transaction with Montgomery, Adams and his vehicle were searched to ensure that the confidential informant had no illegal crack cocaine or money on him. Adams was fitted with a wire and given $1,000 to buy crack cocaine from the defendant. Adams met with Montgomery at a house belonging to Tominesia Sheppard and purchased $1,000 worth of crack cocaine from the defendant. Before Adams left the residence, Montgomery gave him eight additional rocks of crack cocaine and instructed Adams to sell it so that the two of them would have drinking money that same night. After the drug transaction was completed, Adams returned directly to Lieutenant Weaver at a pre-arranged location wherein the drugs were turned over to Lieutenant Weaver. A crime lab determined the weight of the cocaine without the bag to be 29.28 grams.
The defendant was charged with possession of cocaine in excess of 28 grams, a violation of La.R.S. 40:967(F)(1)(a), and conspiracy to distribute cocaine, a violation of La. R.S. 40:967 and. La. R.S. 14:26. He proceeded to a jury trial on April 3, 2006, and was found guilty as charged on both counts. The trial court sentenced him to 28 years at, hard labor on the possession charge and 14 years at hard labor on the conspiracy charge, with the sentences ordered to run concurrently. This appeal ensued.

Discussion
Sufficiency of the Evidence
Montgomery argues that the testimony of the confidential informant, Daran Adams, and Tominesia Sheppard, the other person present at the time of the drug transaction, should be disregarded as they are both state snitches who would do anything to remain out of prison. Montgomery also argues that the videotape of the alleged transaction does not show him exchanging money with or handing crack cocaine to Adams.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *116 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
A confidential informant's testimony may be used to convict a defendant. State v. Zeigler, 40,673 (La.App.2d Cir.1/25/06), 920 So.2d 949.
To find one guilty of possession of cocaine in an amount in excess of 28 grams, the state must prove that the defendant knowingly or intentionally possessed cocaine and that the amount of cocaine possessed was between 28 and 200 grams. La.R.S. 40:967(F)(1)(a); State v. Lewis, 42,365 (La.App.2d Cir.9/19/07), 965 So.2d 971.
To find one guilty of conspiracy to distribute cocaine, the state must show that there existed an agreement or combination of two or more persons for the specific purpose of transferring possession or control of the cocaine to an intended recipient. State v. Williams, 33,881 (La. App.2d Cir.9/27/00), 768 So.2d 728, writ denied, 00-3099 (La.10/5/01), 798 So.2d 963. The elements of the crime of conspiracy are an agreement or combination of two or more persons for the specific purpose of committing a crime and an act done in furtherance of the object of the agreement or combination. La. R.S. 14:26; State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, State ex rel. Hampton v. State, 04-0834 (La.3/11/05), 896 So.2d 57, and State ex rel. Hargrove v. State, 04-2380 (La.6/3/05), 903 So.2d 452; State v. Valrie, 99-226 (La.App. *117 3d Cir.10/13/99), 749 So.2d 11, writ denied, 99-3236 (La.4/20/00), 760 So.2d 343. An essential element of the crime of conspiracy is specific intent. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow the act or failure to act. Even though intent is a question of fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Hampton, supra; State v. Johnson, 01-1084 (La.App. 3d Cir.2/6/02), 817 So.2d 120; State v. Taylor, 96-1043 (La.App. 3d Cir.2/5/97), 688 So.2d 1262. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Valrie, supra. The foundation of the offense is the combination of two minds for an unlawful purpose. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950); State v. Williams, supra. The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. State v. Hampton, supra; State v. Taylor, supra.
At trial, Lieutenant. Dan Weaver was qualified as an expert in narcotics investigation and packaging. Lieutenant Weaver testified that on November 25, 2005, he met with Adams, a confidential informant, and talked to him about purchasing illegal drugs from Montgomery. Adams made contact with Montgomery by phone. In the phone conversation, Adams and Montgomery agreed to meet at a home in Minden, Louisiana, to complete the drug transaction. Adams was given $1,000 to make the purchase of crack cocaine from the defendant. Lieutenant Weaver testified that $1,000 worth of crack cocaine would not be for personal use.
Prior to the drug buy, Adams's person and vehicle were searched to ensure that he had no illegal crack cocaine or money. Thereafter, Adams was fitted with video and audio and was given $1,000 to buy crack cocaine from the defendant. Lieutenant Weaver further testified that he followed Adams to a house in Minden where the drug transaction between Adams and the defendant occurred., Lieutenant Weaver stated that afterward, Adams left the residence and returned directly to Lieutenant Weaver at a pre-arranged location. Adams handed Lieutenant Weaver a bag that had $1,000 worth of cocaine and another bag with eight additional rocks of crack cocaine. Lieutenant Weaver testified that Adams informed him that the defendant had given him eight additional rocks of crack cocaine with instructions to sell the cocaine for partying and drinking money. At trial Lieutenant Weaver was able to identify both Montgomery and the drugs that were purchased from him. He testified that the crime lab determined the weight of the cocaine without the bag to be 29.28 grams.
During Lieutenant Weaver's testimony, a video of the transaction was played to the jury. Based upon his expertise and observation of the video, Lieutenant Weaver was able to point out references to money being transferred and the amount of cocaine being sold.
Adams corroborated Lieutenant Weaver's testimony that he and his vehicle were searched by Lieutenant Weaver prior to the transaction. He further testified that he was equipped with an undercover camera attached to a button on his shirt. Adams stated that he called Montgomery and arranged to purchase an ounce of cocaine from him. Montgomery instructed Adams to meet him at the residence belonging to Sheppard. When Adams arrived at the residence, Sheppard, her child *118 and Montgomery were the only individuals present.
Adams testified that while he was inside the residence, he purchased $1,000 worth of cocaine from Montgomery. Montgomery put the crack on a "digital," and it weighed about thirty grams. Adams also testified that as he was about to get into his vehicle to leave the residence, Montgomery gave him eight additional rocks of cocaine and told him to sell it so that they would have money to buy drinks that night. Adams testified that after he left the residence, he returned directly to Lieutenant Weaver and turned over the cocaine. Adams was shown and identified the video of the transaction. Adams also testified that the conversation on the video included his telling Montgomery that he had $1,000. "He identified that portion of the video where he counted the money and put it on the table. Adams also identified that portion of the video where he told Montgomery "I got it," referring to the additional eight rocks given to him by Montgomery. Adams identified the face on the video as Montgomery and also identified the photograph of the individual taken from the video as Montgomery.
Sheppard testified that she had known Montgomery for over ten years and that he had a key to her residence and came and went as he pleased. On November 25, 2005, Adams came to her home. Montgomery was also at her residence that day. On the day in question, Sheppard testified that there were no other males present at her residence while Adams and the defendant were there. Sheppard identified Montgomery in court and in the photographs taken from the video of the drug transaction. Sheppard viewed a portion of the video. She identified both Adams's and Montgomery's voices from the video, and she testified that the house depicted was her home.
Lieutenant Marvin Garrett of the narcotics division of the Minden Police Department also testified. He testified that Adams first approached the Minden Police to assist them with purchasing cocaine from Montgomery. Lieutenant Garrett and Lieutenant Weaver rode together and maintained visual contact with Adams as he traveled to and from the buy location. He did not observe Adams make any stops either en route to or on the way back from the buy.
The jury was allowed to view the video recording of the transaction during trial and deliberation. The video also shows Montgomery's interaction with Adams. Adams's explanation to the officers regarding his receipt of the extra cocaine is also heard during the video.
Montgomery presented no evidence and did not testify on his own behalf.
Considering the testimony and evidence in a light most favorable to the prosecution, a rational fact finder could have found beyond a reasonable doubt that the evidence was sufficient to support Montgomery's convictions of possession of cocaine in excess of 28 grams and conspiracy to distribute cocaine.
After cross-examination of the witnesses by Montgomery, the jury obviously found the testimony of the state's witnesses truthful. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, supra. If believed, the evidence when viewed in the light most favorable to the state establishes beyond a reasonable doubt that Montgomery possessed 29.28 grams of crack cocaine and entered into an agreement with Adams for the specific purpose of transferring possession or control of the cocaine to an intended recipient.
*119 Videotape
Montgomery next argues that the trial court erred in not permitting the jury to view the videotape during deliberations. He contends that the ruling to disallow the tape was highly prejudicial because the tape does not show money or, drugs changing hands and that a review would have allowed the jury to better evaluate the strengths and weaknesses of the state's case on the issue.
This argument finds no support in the record. While in an initial ruling, the trial court disallowed further review of the video during deliberations, the record shows that the trial court ultimately allowed the jury to view and listen to the videotape of the drug transaction in the courtroom. The court relied on State v. Brooks, 01-0785 (La.1/14/03), 838 So.2d 725, which allows a jury's review of properly admitted evidentiary exhibits during its deliberations, including audio and video tapes. Thus, this mistaken claim presents no error and the argument is without merit.
Batson Challenge
Montgomery argues that during voir dire, and after the state and the defense raised Batson challenges, the trial court only questioned those jurors that were challenged at the time of the objection and did not bring back all prior jurors that were struck by both the state and defense counsel. The defendant asserts that the proper procedure for addressing the Batson claims would have been for the trial court to question both parties as to their race-neutral reasons for all the prior excluded jurors.
La.C.Cr.P. art. 841 provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The Louisiana Supreme Court has consistently held that a defendant waives review of irregularities in the selection of the jury when an objection is not timely raised. State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, cert. denied, Tilley v. Louisiana, 532 U.S. 959, 121 S.Ct. 1488, 149' L.Ed.2d 375 (2001); State v. Potter, 591 So.2d 1166 (La.1991); State v. Whitt, 404 So.2d 254 (La.1981).
In State v. Bazile, 386 So.2d 349 (La. 1980), the defense objected to the voir dire procedure employed by the trial court after the jurors had been selected and sworn, but before opening arguments. The Louisiana Supreme Court held that the propriety of the voir dire procedure could not be considered on appeal because the defense had failed to timely object to the procedure as required by La.C.Cr.P. art. 841.
In the instant case, because Montgomery did not object to the trial court's procedure for addressing the Batson claims until after the jury was sworn and empaneled. He is therefore precluded from raising this issue on appeal.
Juror Hughes
In this assignment of error, Montgomery argues that because his counsel exhausted his last peremptory challenge on Juror Hughes, the failure of the. trial judge to have earlier excused the challenged juror for cause was an abuse of discretion and constitutes reversible error.
Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, the defendant need only show: (1) the erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278.
A challenge for cause is not warranted where a prospective juror has *120 volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Eastin, 419 So.2d 933 (La.1982); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993); State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). If after subsequent questioning the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. When assessing whether a challenge for cause should be granted, the trial judge must look at the juror's responses during her entire testimony, not just correct isolated answers or even incorrect isolated answers. State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, Lee v. Louisiana, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Van Sales, 38,138 (La.App.2d Cir.3/3/04), 867 So.2d 849, writ denied, State ex rel. Van Sales v. State, 04-1305 (La.4/22/05), 899 So.2d 569. A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Howard, supra.
The grounds for which a juror may be challenged for cause are set forth in La. C.Cr.P. art. 797, in pertinent part:
The state or defendant may challenge a juror for cause on the ground that:
(2) the juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.
* * *
(4) The juror will not accept the law as given to him by the court; . . .
Montgomery challenged Juror Hughes for cause. She had stated that although she would not expect the defendant to prove anything in the case, she would expect defense counsel to prove that the defendant was innocent. Counsel thanked the potential juror for her frankness and again inquired whether or not she would require the defense counsel to prove anything. Ms. Hughes again responded yes. Defense counsel challenged Hughes for cause.
Upon further examination, the court twice asked Hughes if she would require the defendant to prove anything if the court instructed her that the defendant did not have to prove a thing. She twice responded that she would not. Hughes also agreed to follow the law as given by the court. The court declined to grant the defense's challenge for cause finding that Hughes had been rehabilitated and would follow the law. Counsel lodged no objection to the denial of the challenge for cause but exercised its final peremptory challenge to excuse Hughes.
La.C.Cr.P. art. 800 relates to the necessity of an objection to a ruling on a challenge for cause in pertinent part:
A. A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of the objection.
In this matter, because counsel failed to lodge a contemporaneous objection, Montgomery is precluded from urging error in *121 the court's denial of his challenge for cause. Moreover, a review of Hughes' entire testimony shows the juror's ability and intent to disregard her previous mistaken views and to decide the case impartially according to the law and the evidence.
Mistrial
Montgomery argues that the trial court's denial of his four requests for mistrial throughout the proceedings due to misconduct on the part of the jury and the state cumulatively denied his right to a fair trial.
Mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 (La. 1978); State v. Stills, 600 So.2d 134 (La. App. 2d Cir.1992). A mistrial is warranted when certain remarks are considered so prejudicial and potentially damaging to the defendant's rights that even a jury admonition could not provide a cure. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443.
La.C.Cr.P. art. 775 directs the granting of a mistrial, in pertinent part, as follows:
A mistrial may be ordered, and in a jury case the jury dismissed when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) the court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770. . . .
La.C.Cr.P. art. 770 addresses the granting of a mistrial in relevant part as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
Defense counsel made one request for a mistrial because of laughter by prospective jurors during jury selection. The trial court denied the motion, stating that the laughter was due to the lateness of the hour and only occurred towards the end of the proceedings. The trial court went on to state that the prospective jurors took the process and the questions very seriously and that they responded appropriately in voir dire.
Our review of the record before us shows eleven instances of laughter by the potential jurors during jury selection. In only one of those instances was the courtroom summoned to order after a statement by the trial judge. Five other instances of laughter were caused by statements made *122 by potential jurors. The remaining five instances were elicited during interchanges by counsel with potential jurors or the court or during questioning by counsel. Our review of the statements which elicited laughter in the courtroom posed no prejudice to Montgomery and were part of the normal process of jury selection. Thus, no abuse of the trial court's discretion occurred in denying this claim for mistrial.
A second request for a mistrial occurred when the state approached Lieutenant Weaver as he was on the witness stand and whispered to him in the presence of the jury. When the trial court questioned Lieutenant Weaver regarding the nature of the conversation, Lieutenant Weaver responded that the prosecutor had inquired about Adams's presence at the courthouse. The trial court went on to admonish the prosecutor and denied defense counsel's request for a mistrial, relying on State v. Morgan, 315 So.2d 632 (La.1975), which stands for the proposition that the lawyers involved in cases have a right to discuss the case with witnesses.
As in the cited case, Montgomery has failed to make a showing that the discussion was heard by the jury or that there was any impropriety demonstrated in the discussion. Thus, Montgomery has established no prejudice nor an abuse of discretion by the trial court.
The third request for a mistrial occurred during the cross-examination of Sheppard when defense counsel asked the witness, "Now you do recall something about Montie Montgomery, is that right?" The prosecutor objected to the question, stating that defense counsel was "opening the door" and that "we need to stick to the November 25, 2005. . . ." Defense counsel requested that the jury be removed from the courtroom. He argued that the prosecutor's statement strongly implied that Montgomery was involved in other matters on other dates which the trial court had determined to be inadmissible. The trial court admonished the prosecutor to be careful regarding what was said before the jury. Likewise, the trial court admonished defense counsel and denied the request for a mistrial.
A review of the prosecutor's statement shows no reference to a specific crime or criminal activity in violation of La. C.E. art. 404(B). In context, the request by the prosecutor to limit questions to the time of the crime does not unduly suggest that Montgomery was guilty of another crime or bad acts. Thus, the trial judge did not err in refusing to grant the mistrial motion.
The fourth request for a mistrial occurred during the state's closing argument when the prosecutor commented on Adams saying, "to me he looked very credible, and I don't think he, you know, mis, told you anything." Defense counsel argued that the prosecutor had testified about the credibility of the witness. After researching the issue, the trial court denied the request by relying on State v. Smith, 41,048 (La.App.2d Cir.6/30/06), 935 So.2d 797, Which holds that a defendant is not entitled to a mistrial based on the prosecutor's statement of the credibility of the witness.
Commenting on the credibility of the witnesses is proper and within the scope of closing argument. State v. Mims, 39,757 (La.App.2d Cir.6/29/05), 907 So.2d 237. Moreover, an argument with regard to the credibility of a witness is proper where the credibility of the witness is in question and the facts bearing on the witness's credibility appear in the record. State v. Sayles, 395 So.2d 695 (La.1981); State v. Brewer, 38,515 (La.App.2d *123 Cir.8/20/04), 880 So.2d 1005, writ denied, 04-2509 (La.2/18/05), 896 So.2d 27.
In the instant case, the testimony at trial revealed that Adams had two counts of distributing cocaine charges pending against him and was facing 60 years in prison. As Adams's credibility was in question and facts bearing on his credibility appear in the record, the prosecutor's comments were proper. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial.
The last request for a mistrial occurred during the state's rebuttal argument. The prosecutor noted that defense counsel did not show the entire video of the drug transaction to the jury and did not focus on Chapter 3 of the videotape. Defense counsel argued that the prosecutor's remark about Chapter 3 of the videotape suggested that defense counsel did not want the jury to view the entire videotape. The trial court denied the request, stating that the prosecutor's remark was in rebuttal to a statement made by defense counsel during defense counsel's closing argument pertaining to Chapter 3 of the videotape. Defense counsel admitted that he made the statement.
La.C.Cr.P. art. 774 sets forth the permissible scope of closing argument and states that "[t]he state's rebuttal shall be confined to answering the argument of the defendant." In the instant case, the prosecutor's remarks were intended to rebut the effect of defense counsel's explanation in his closing argument regarding why the defense downplayed Chapter 3 of the video. Therefore, these remarks do not amount to prejudicial conduct that would make it impossible for Montgomery to obtain a fair trial.
Because Montgomery has demonstrated no prejudicial error in the denial of any of his motions for mistrial, his claim regarding the cumulative effect of the trial court rulings on his right to a fair trial has no merit.
Excessive Sentence
Montgomery argues that his sentences were excessive because the trial court failed to take his health, employment record, or marital status into consideration. Montgomery filed no motion to reconsider sentence.
When a defendant fails to timely file a La.C.Cr.P. art. 881.1 motion to reconsider sentence, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61; State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164.
Even so, the record in this matter shows that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1 prior to sentencing Montgomery. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines set forth in the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not a rigid or mechanical compliance with its provisions. State v. Price, 40,437 (La.App.2d Cir.1/25/06), 920. So.2d 389. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital *124 status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
Second, the sentence is considered unconstitutionally excessive as violative of La. Const. art. 1, § 20 if it is too severe given the circumstances of the case and the defendant's background or if it is a needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock one's sense of justice.
A trial court has broad discretion to sentence within the statutory limits and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, Cook v. Louisiana, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
For the possession of cocaine in excess of 28 grams but less than 200 grams, Montgomery faced potential sentencing exposure of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay of fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars. La. R.S. 40:967(F)(1)(a). The adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F. La. R.S. 40:967(G). For the conspiracy to distribute cocaine conviction, Montgomery faced maximum sentencing exposure of fifteen years, with the first two years to be served without benefits. La. R.S. 40:967(B); La. R.S. 14:26.
Prior to imposing sentence, the trial court noted Montgomery's extensive criminal history which included numerous misdemeanors and felonies. The court considered that Montgomery had a six-felony record and two pending felony charges. Specifically, the court noted that Montgomery had committed several assaultive behavior crimes, including three guilty pleas for aggravated assault and one for aggravated battery. The court also took into consideration the fact that Montgomery had two prior felony drug convictions and one obstruction of justice conviction. The court determined that no mitigating factors existed and that Montgomery had repeatedly proven that he intended to use the sale of drugs to provide for himself the quality of lifestyle he desired. The court also determined that without incarceration, Montgomery would continue to be a threat to society. Thereafter, the court imposed a twenty-eight year sentence on the possession of cocaine over 28 grams conviction and fourteen years for the conspiracy charge.
Given the circumstances of the case and Montgomery's background, we cannot find that the imposed sentences were constitutionally excessive. Montgomery obviously failed to benefit from the prior leniency given to him and has not been rehabilitated through previous incarceration. His continued involvement with drug activity justifies the near maximum sentences imposed by the court. He represents a continued threat to society by repeatedly proving that he intends to use the sale of *125 illegal narcotics to maintain his lifestyle. Thus, we find this argument to have no merit.
Error Patent
We note that with regard to the conspiracy conviction, the first two years of the sentence should have been imposed without benefit of parole, probation, or suspension of sentence. La. R.S. 40:967. This omission will be automatically corrected by operation of La. R.S. 15:301.1. State v. Powell, 42,540 (La.10/24/07), 968 So.2d 823.

Conclusion
For the foregoing reasons, Montgomery's convictions and sentences are affirmed.
AFFIRMED.