BROWN, Chief Judge.
 

 | defendant, Montie Montgomery, was charged in a two-count bill of information which stated that on November 25, 2006, he possessed a Schedule II Controlled Dangerous Substance (CDS), namely crack cocaine, in excess of 28 grams, and conspired to distribute a Schedule II CDS, namely crack cocaine. On March 14, 2007, a jury found defendant guilty on both counts. On May 21, 2007, defendant was given concurrent hard labor terms of 28 and 14 years. A
 
 pro se
 
 motion to reconsider sentence was denied on August 27, 2007. Defendant appealed the convictions and sentences and this court affirmed.
 
 State v. Montgomery,
 
 42,835 (La.App.2d Cir.01/09/08), 974 So.2d 110.
 

 On August 24, 2007, while the appeal was pending, the prosecutor filed a bill of information charging Montgomery as a three-time habitual offender. La. R.S. 15:529.1. On February 25, 2008, a motion for new trial based on newly discovered evidence was filed. We note that the jury’s guilty verdicts were rendered on March 14, 2007, and the appellate decision was rendered on January 9, 2008.
 
 See
 
 La. C. Cr. P. art. 853.
 

 Following an evidentiary hearing, the trial court denied the motion for new trial on February 25, 2009. Having found defendant to be a second felony offender, the court sentenced him to concurrent terms of 55 years on the first count (possession of crack cocaine in excess of 28 grams) and 25 years on the second count (conspiracy to distribute).
 
 [1]
 
 A motion to |2reconsider the sentence was filed and denied. An appeal was filed urging that the trial court erred in denying the motion for a new trial based on newly discovered evidence; that defendant was incorrectly adjudicated a second felony offender; and that his sentence is excessive. We affirm.
 

 Discussion
 

 New Trial Motion
 

 The present case arose out of events which took place on November 25,
 
 *562
 
 2005. Defendant argues that the trial court erred in denying the motion for new trial. He claims to have discovered new and material evidence that would probably have changed the guilty verdict. The facts developed at the trial are set forth in this court’s original opinion as follows:
 

 Lieutenant Dan Weaver was qualified as an expert in narcotics investigation and packaging. Lieutenant Weaver testified that on November 25, 2005, he met with Adams, a confidential informant, and talked to him about purchasing illegal drugs from Montgomery. Adams made contact with Montgomery by phone. In the phone conversation, Adams and Montgomery agreed to meet at a home in Minden, Louisiana, to complete the drug transaction. Adams was given $1,000 to make the purchase of crack cocaine from the defendant. Lieutenant Weaver testified that $1,000 worth of crack cocaine would not be for personal use.
 

 Prior to the drug buy, Adams’s person and vehicle were searched to ensure that he had no illegal crack cocaine or money. Thereafter, Adams was fitted with video and audio and was given $1,000 to buy crack cocaine from the defendant. Lieutenant Weaver further testified that he followed Adams to a house in Minden where the drug transaction between Adams and the defendant occurred. Lieutenant Weaver stated that afterward, Adams left the residence and returned directly to Lieutenant Weaver at a pre-arranged location. Adams handed Lieutenant Weaver a bag that had $1,000 worth of cocaine and another bag with eight additional rocks of crack cocaine. Lieutenant Weaver testified that Adams informed him that the defendant had given him eight additional rocks of crack cocaine with instructions to sell the cocaine for partying and drinking money. At lotrial Lieutenant Weaver was able to identify both Montgomery and the drugs that were purchased from him. He testified that the crime lab determined the weight of the cocaine without the bag to be 29.28 grams
 

 During Lieutenant Weaver’s testimony, a video of the transaction was played to the jury. Based upon his expertise and observation of the video, Lieutenant Weaver was able to point out references to money being transferred and the amount of cocaine being sold.
 

 Adams corroborated Lieutenant Weaver’s testimony that he and his vehicle were searched by Lieutenant Weaver prior to the transaction. He further testified that he was equipped with an undercover camera attached to a button on his shirt. Adams stated that he called Montgomery and arranged to purchase an ounce of cocaine from him. Montgomery instructed Adams to meet him at the residence belonging to Sheppard. When Adams arrived at the residence, Sheppard, her child and Montgomery were the only individuals present.
 

 Adams testified that while he was inside the residence, he purchased $1,000 worth of cocaine from Montgomery. Montgomery put the crack on a “digital,” and it weighed about thirty grams. Adams also testified that as he was about to get into his vehicle to leave the residence, Montgomery gave him eight additional rocks of cocaine and told him to sell it so that they would have money to buy drinks that night. Adams testified that after he left the residence, he returned directly to Lieutenant Weaver and turned over the cocaine. Adams was shown and identified the video of the transaction. Adams also testified that the conversation on the video included his telling Montgomery that he had $1,000. He identified that portion
 
 *563
 
 of the video where he counted the money and put it on the table. Adams also identified that portion of the video where he told Montgomery “I got it,” referring to the additional eight rocks given to him by Montgomery. Adams identified the face on the video as Montgomery and also identified the photograph of the individual taken from the video as Montgomery.
 

 Sheppard testified that she had known Montgomery for over ten years and that he had a key to her residence and came and went as he pleased. On November 25, 2005, Adams came to her home. Montgomery was also at her residence that day. On the day in question, Sheppard testified that there were no other males present at her residence while Adams and the defendant were there. Sheppard identified Montgomery in court and in the photographs taken from the video of the drug transaction. Sheppard viewed a portion of the video. She identified both Adams’s and Montgomery’s voices from the video, and she testified that the house depicted was her home.
 

 ^Lieutenant Marvin Garrett of the narcotics division of the Minden Police Department also testified. He testified that Adams first approached the Minden Police to assist them with purchasing cocaine from Montgomery. Lieutenant Garrett and Lieutenant Weaver rode together and maintained visual contact with Adams as he traveled to and from the buy location. He did not observe Adams make any stops either en route to or on the way back from the buy. The jury was allowed to view the video recording of the transaction during trial and deliberation. The video also shows Montgomery’s interaction with Adams. Adams’s explanation to the officers regarding his receipt of the extra cocaine is also heard during the video. Montgomery presented no evidence and did not testify on his own behalf.
 

 State v. Montgomery,
 
 974 So.2d at 117-118.
 

 A man named Preston Key was defendant’s witness at the new trial motion. According to Key, Darren Adams asked him to set up Montgomery. Key claims that one night, around August or September of 2005, Adams showed him a Cadillac and asked him to put drugs underneath the vehicle. Key did not remember the model or year of the car or where it was located but claims that something about the car stood out to him. After defendant’s conviction and while in jail with defendant, Key saw a photograph sent to defendant by defendant’s family. He claims that the Cadillac shown in the photograph looked like the Cadillac that Adams asked him to plant drugs in. It was then that he realized that Adams had attempted to get him to frame defendant.
 

 The defense claims that Montgomery was only convicted because of the testimony of the confidential informant, Darren Adams. The defense argued to the jury that Adams, as well as his mother and brother, had pending charges. According to the defense, Adams set up Montgomery so | she and his family could “work off their pending charges.” The defense states that prior to testifying Adams had a significant sentence, but after testifying against Montgomery, only received a sentence of ten years with five of those years suspended. Further, the defense claims that the video of the drug deal does not corroborate Adams’ testimony.
 

 La. C. Cr. P. art. 851 states in part:
 

 The court, on motion of the defendant, shall grant a new trial whenever:
 

 (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant,
 
 *564
 
 was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
 

 Key’s alleged evidence was discovered after defendant’s trial; however, the evidence must be material to the issues at trial and of such a nature that it would probably produce a different verdict in the event of retrial.
 
 State v. Brisban,
 
 00-3437 (La.02/26/02), 809 So.2d 923.
 

 The trial court is required to determine whether or not the evidence is material and whether or not the evidence would cause the jury to reach a different verdict. A trial judge’s decision on a motion for new trial will not be disturbed absent a showing that the judge abused his discretion.
 
 State v. Fuller,
 
 414 So.2d 306 (La.1982).
 

 Defendant argues that Adams lied and without Adams’ testimony, there would be no other evidence to convict Montgomery due to the poor quality of the video of the transaction. This argument is without merit. On the previous appeal (from the trial), this same argument was made under the color of an insufficiency of the evidence claim. This court found that the|fievidence was sufficient and that the video did show the transaction between Montgomery and Adams and that the audio also corroborated Adams’ testimony. In addition there was a third party present, Ms. Sheppard, who also testified as to the transaction inside the house.
 
 State v. Montgomery, supra.
 

 The trial court properly evaluated Key’s latent “jailhouse” memory and found that this information would not have produced a different verdict. We agree and find that the court did not abuse its discretion by denying the motion for new trial. Key’s sudden jailhouse moment of revelation is suspect. Even so, the alleged solicitation to plant evidence in an automobile two months earlier was never consummated. Adams did not show up nor did he pay Key the money to have it done. In the present case, the informant (Adams) went to a house under police surveillance and once inside, bought drugs from defendant. This transaction was recorded and the recording shown to the jury. A third person, who was inside the house, also testified as to what occurred. There is little significance to Key’s revelation.
 

 Second Felony Offender
 

 In a previous conviction for attempted possession of cocaine, defendant was adjudicated a second felony offender predicated on an obstruction of justice conviction in 1999, and his sentence at that time was enhanced from two and one-half years to five years. Defendant appealed that conviction and sentence, and this court affirmed.
 
 State v. Montgomery,
 
 42,432 (La.App.2d Cir.09/19/07), 966 So.2d 127.
 

 |7In the case
 
 sub judice,
 
 defendant was found to be a second felony offender again using the 1999 obstruction of justice conviction. According to the defense, a second enhancement cannot be imposed using the 1999 obstruction of justice conviction.
 
 [2]
 

 The State did not address this issue in its brief.
 

 La. R.S. 16:529.1 (A)(1)(a) pertinently states:
 

 A. (1) Any person who, after having been convicted within this state of a felony ... or who, after having been convicted under the laws of any other
 
 *565
 
 state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
 

 a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
 

 The supreme court in
 
 State v. Shaw,
 
 06-2467 (La.11/27/07), 969 So.2d 1233, held that a previous conviction could be used as a predicate offense to again enhance a defendant’s sentence as a second felony offender. In that case, Shaw was convicted of five felonies resulting from a single set of circumstances. Shaw had two previous felony convictions and the sentences on all five of the instant convictions were enhanced based on these prior felony convictions. After a lengthy discussion of La. R.S. 15:529.1 and the rules of statutory interpretation, the court held that the Isdefendant’s prior convictions could be used to enhance all five of the instant convictions. The rationale was that using “clear and unambiguous terms, the statute exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction.”
 
 State v. Shaw,
 
 969 So.2d at 1245. The court stated that “[t]he goal is to deter and punish recidivism by punishing more harshly those who commit the most crimes.”
 
 State v. Shaw,
 
 969 So.2d at 1244;
 
 State v. Johnson,
 
 97-1906, (La.03/04/98), 709 So.2d 672.
 

 In
 
 State v. Pearson,
 
 03-652 (La.App. 5th Cir.12/09/03), 861 So.2d 283, the defendant was convicted of possession of cocaine in 1990 and was convicted of theft in 1995. In 2000, the defendant pled guilty to possession of cocaine. A habitual offender bill was then filed charging Pearson with being a third felony offender. Pearson stipulated to the bill at the time but on appeal he urged that he was improperly adjudicated a third felony offender. Pearson claimed that the 1990 conviction had been used to adjudicate him a second felony offender and enhance his penalty after the 1995 conviction. Therefore, he argued it was “double enhancement” to use the 1990 conviction as a predicate for adjudicating him a third felony offender. The court held that there was no prohibition against using the same conviction multiple times in separate multiple offender hearings to sequentially establish the offender’s status.
 
 [3]
 

 lain the instant case, the issue is whether or not a predicate felony can be used to enhance a felony that has been subsequently committed if it has already been used to enhance another, unrelated crime. In
 
 State v. Shaw,
 
 supra, the Louisiana Supreme Court held that one predicate felony could be used to enhance five different felony convictions. The line of logic set forth by the court in
 
 State v. Shaw
 
 is consistent with La. R.S. 15:529.1’s purpose, which is to punish recidivist crim
 
 *566
 
 inals. This reasoning is applicable to the present case. Montgomery is clearly a recidivist; therefore he falls within the parameters of the statute.
 

 Excessive Sentence
 

 The defense argues that the sentence in this case is excessive, even though it is not the maximum.
 

 Defendant was sentenced as a second felony offender to concurrent sentences of 55 years imprisonment for possession of Schedule II CDS (in excess of 28 grams) and 25 years imprisonment for conspiracy to distribute a Schedule II CDS. Applying the enhancement provisions of La. R.S. 15:529.1 to La. R.S. 40:967 and La. R.S. 14:26, the judge could have sentenced the defendant for up to 60 years imprisonment for the possession charge and up to 30 years for conspiracy charge. The trial judge took cognizance of La. C. Cr. P. art. 894.1, and found that a lesser sentence would take away from the seriousness of the crime. Further, the judge considered the criminal history, as well as the family and social history, of 110defendant to determine that he has an established pattern of criminal behavior. Specifically, defendant has committed three other felonies. Sentencing this defendant to less than the maximum allowable sentence does not shock the sense of justice.
 
 State v. Weaver,
 
 01-0467 (La.01/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App.2d Cir.01/24/07), 948 So.2d 379;
 
 State v. Bradford,
 
 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
 

 Conclusion
 

 Defendant’s convictions and sentences are affirmed.
 

 [1]
 

 . Defendant was charged with and found guilty of
 
 possession
 
 of a Schedule II CDS, namely crack cocaine,
 
 in excess of 28 grams,
 
 and conspiring to distribute crack cocaine. The sentences were enhanced after defendant was adjudicated a second felony offender. At sentencing, the trial court referred to count one as
 
 distribution
 
 rather than possession in excess of 28 grams. Clearly, this was a slip of the tongue. However, according to La. R.S. 40:967(B)(4)(b) and La. R.S. 40:967(F)(l)(a), the maximum term for either is 30 years.
 

 [2]
 

 . The other alleged prior crimes charged in the habitual offender bill were a Texas conviction for possession of cocaine in which defendant was placed on deferred adjudication and the attempted possession of cocaine conviction. The trial court's rejection of these offenses was not objected to or appealed by the state.
 

 [3]
 

 . The defense relies on
 
 State v. Cass,
 
 44,411 (La.App.2d Cir.08/19/09), 17 So.3d 486. In that case, a defendant had been convicted of armed robbery in 1977 and attempted aggravated rape in 1979; however, both of these convictions arose out of the same incident which occurred in 1974. Cass was convicted of another felony in 2008 and the State filed a third offense habitual offender bill of information. The defense in that case filed a motion to quash the bill arguing that two separate convictions from the same incident cannot be used as separate felonies for purposes of sentence enhancement. The trial court agreed and the issue was appealed. This court found that
 
 State v. Shaw, supra,
 
 was clearly distinguishable and affirmed the trial court’s decision.