GASKINS, J.
 

 | jThe defendant, Jeffrey Keith Thurman, was convicted of six counts of distribution of cocaine. He was adjudicated a third felony offender and was sentenced as such on all six counts of distribution of cocaine. The trial court ordered that the defendant serve 45 years at hard labor, without benefit of parole, probation, or suspension of sentence, for each of the six counts of distribution of cocaine, with the sentences to be served concurrently. The defendant appealed, arguing that the sentence is excessive and that it is indeterminate. For the following reasons, we affirm the defendant’s convictions and, as amended, affirm his sentences.
 

 FACTS
 

 The Ruston Police Department and the Lincoln Parish Narcotics Enforcement Team (LPNET) received information from a reliable confidential informant, Donald Fields, that the defendant was selling cocaine. Mr. Fields had known the defendant since 2000, and had talked with the defendant around Easter in 2008 about buying drugs. On May 28, 2008, Mr. Fields and Lieutenant Michael Lestage of the Ruston Police Department and the LPNET began an investigation into the defendant’s drug activities. Mr. Fields contacted the defendant and discussed purchasing cocaine. Mr. Fields went to the LPNET office where his vehicle and person were searched to insure that Mr. Fields was not in possession of any drugs. Mr. Fields was given $100 in “buy money.” The money was photocopied to record the serial numbers. Mr. Fields was fitted with audio-video recording equipment. Mr. Fields drove his vehicle to a prearranged |2location to meet the defendant. Law enforcement officials followed him. Mr. Fields met the defendant and bought cocaine from him for $100.
 

 Mr. Fields returned to the LPNET office where he handed over the cocaine along with the audio-video equipment. The cocaine was checked in as evidence and eventually transferred to the North Louisiana Crime Lab (“Crime Lab”) where it was tested and determined to be cocaine. The recording from the audio-video equipment was transferred to a computer and put on a DVD. The defendant was not arrested at that point. According to Lieutenant Lestage, law enforcement officials wanted to show that this was not happenstance for the defendant, but something that he did on a regular basis. Mr. Fields contacted the defendant and made cocaine purchases on five more occasions.
 

 On June 5, 2008, Mr. Fields went to the LPNET office, his vehicle and person were searched, he was fitted with audio-video equipment and he was given $100 in buy money. He made contact with the defendant, who told Mr. Fields to meet him at “Elzie’s house.” He was then directed to another location. Mr. Fields met the defendant at the designated location and followed him to a vacant lot. Mr. Fields purchased $100 worth of cocaine from the defendant. Mr. Fields returned to the LPNET office and handed over the audio-
 
 *470
 
 video equipment and the cocaine. The cocaine was placed into evidence. The contraband was transferred to the Crime Lab where it was tested and determined to be cocaine.
 

 On June 10, 2008, the same procedure was followed where law enforcement officials searched Mr. Fields and his vehicle, gave him $100 in |sbuy money, and equipped him with audio-video equipment. Mr. Fields went to Elzie’s house and called the defendant to tell him he was in the area and was ready to make a drug buy. Elzie appeared and said he would take the money to the defendant and bring back the cocaine. Mr. Fields called the defendant and told him that he did not want any complications. The defendant assured Mr. Fields that there would not be any problems. Mr. Fields watched Elzie walk down the street to the defendant’s house and then return with the cocaine. Mr. Fields turned the audio-video equipment over to the police along with the cocaine which was processed as evidence and transferred to the Crime Lab where it was tested and determined to be cocaine.
 

 On June 12, 2008, Mr. Fields went to the LPNET office and followed the same procedure used in the past. He was given $100 in buy money and called the defendant to make a drug purchase. Mr. Fields told the defendant to come to Elzie’s house. The defendant stated that he was around the corner. However, when Mr. Fields arrived, a young man walked up to his vehicle. Mr. Fields asked where the defendant was and the man replied, “I have it. I’ve got it.” Mr. Fields paid the man the $100 and received cocaine. The cocaine was turned over to law enforcement officers, tested by the Crime Lab, and determined to be cocaine.
 

 Lieutenant Lestage did not participate in the last two instances in which Mr. Fields bought drugs from the defendant. Lieutenant Chris Bittick, who had previously aided Lieutenant Lestage, was in charge of the last two drug buys. The focus of the investigation was Miketavious Brooks, |4not the defendant. Mr. Fields had furnished information to law enforcement officials that this individual was selling drugs.
 

 Mr. Fields went to the LPNET office on August 5, 2008. His person and vehicle were searched, he was equipped with audio-video equipment, and he was given $80 in buy money. Mr. Fields telephoned Mr. Brooks from a convenience store and was told to come to Elzie’s house and then to proceed to the end of a certain dead-end street if no one was at Elzie’s. Mr. Fields followed the instructions and saw several men under a tree. Mr. Brooks did not appear, but the defendant came up to him and sold him $80 in cocaine. Mr. Fields was not able to get the defendant on the video recording because the transaction occurred so quickly. The cocaine was turned over to Lieutenant Bittick and eventually transferred to the Crime Lab where it was tested and determined to be cocaine.
 

 On August 7, 2008, Mr. Fields again worked with Lieutenant Bittick with the goal of making a drug buy from Mr. Brooks. The same procedure was followed and Mr. Fields was given $80 in buy money. Mr. Fields contacted Mr. Brooks about buying drugs and went to the location directed by Mr. Brooks. Mr. Brooks did not appear, but the defendant arrived as a passenger in a car driven by an unknown female. Mr. Fields purchased $80 in cocaine from the defendant. He gave the cocaine to Lieutenant Bittick, who transferred it to the Crime Lab where it was tested and determined to be cocaine.
 

 On November 20, 2008, the defendant was charged by bill of information with six counts of distribution of a controlled dan
 
 *471
 
 gerous ^substance, cocaine. The defendant was tried by jury. The prosecution presented the testimony of Lieutenant Lestage, Lieutenant Bittick, and Donald Fields. The audio-video recordings of the drug buys were played for the jury. The defendant called Mr. Fields to testify. According to Mr. Fields, he was introduced to the defendant by Iva Jean Caldwell several years before the incidents forming the basis of this case. Iva Jean Caldwell testified; she denied introducing Mr. Fields to the defendant and said that Mr. Fields had a reputation in the community for not being truthful. The defendant also called Terry Stanley as a witness. He testified that Mr. Fields had a reputation for not telling the truth. The defendant was found guilty of all six counts.
 

 In July 2009, the defendant was charged by bill of information with being a third felony offender. The prosecution alleged that the defendant had pled guilty to two counts of possession of cocaine in October 1999 and had entered a guilty plea to possession of cocaine and attempted possession of a firearm by a convicted felon in November 2005. The state requested that the defendant be sentenced as a third felony offender for all six counts of distribution of cocaine. A habitual offender hearing was held on March 9, 2010. The defendant was adjudicated a third felony offender on all counts. The defendant filed motions for new trial and for post verdict judgment of acquittal, which were denied by the trial court.
 

 The defendant appeared before the court for sentencing on July 14, 2010. The trial court observed that, although the defendant had been adjudicated a third felony offender, he had previously been convicted of five | (ifelonies. The defendant had three convictions for distribution of cocaine that occurred outside the 10-year cleansing period of La. R.S. 15:529.1(C). The court concluded that the defendant had made his living by distributing drugs. According to the court, there was an undue risk of the defendant committing another crime, the defendant was in need of correctional treatment or a custodial environment best provided by commitment to an institution, and a lesser sentence would deprecate the seriousness of the offense. As an aggravating factor, the trial court considered that the defendant obtained substantial income and resources from ongoing drug activities. The court noted that, based upon the defendant’s adjudication as a third felony offender, the range for sentencing on each of the six counts of distribution of cocaine for which he had been convicted was 20 years to 60 years at hard labor. The trial court sentenced the defendant to serve 45 years at hard labor, without benefit of parole, probation, or suspension of sentence for each of the six counts of distribution of cocaine for which he was convicted, with the sentences to be served concurrently. The defendant made an oral motion to reconsider the sentences which was denied by the trial court. The defendant appealed, claiming that the sentences were constitutionally excessive and that the sentences were indeterminate.
 

 EXCESSIVE SENTENCES
 

 The defendant argues that the concurrent sentences of 45 years at hard labor without benefit of parole, probation, or suspension of sentence for each of his six convictions for distribution of cocaine are excessive. He contends that the sentencing court focused only on his criminal history and 17did not consider his family ties, social history, health, or employment. The defendant urges that by focusing only on his criminal past, the trial court failed to particularize the sentence to this defendant. This argument is without merit.
 

 
 *472
 
 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. McDaniel,
 
 42,926 (La.App.2d Cir.1/9/08), 974 So.2d 146. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.
 
 State v. Autry,
 
 45,029 (La.App.2d Cir.1/27/10), 30 So.3d 1068. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747,
 
 writ denied,
 
 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Jones,
 
 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392,
 
 writ denied,
 
 2000-1467 (La.2/2/01), 783 So.2d 385;
 
 State v. McDaniel, supra.
 

 IsSecond, a sentence violates La. Const, art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. McDaniel, supra.
 
 A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. McDaniel, supra.
 

 The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of his discretion.
 
 State v. Williams,
 
 2003-3514 (La.12/13/04), 893 So.2d 7;
 
 State v. Autry, supra.
 

 A person convicted of distribution of cocaine shall be sentenced to a term of imprisonment at hard labor for not less then two years nor more than 30 years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence. La. R.S. 40:967(B)(4)(b).
 

 At the time of the defendant’s adjudication as a third felony offender, La. R.S. 15:529.1 provided in pertinent part:
 
 [1]
 

 A. (1) Any person who, after having been convicted within this state of a felony ..., thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
 

 [9(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
 

 (i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; ....
 

 Under this statutory scheme, the sentencing range for a third felony habitual offender on each count of distribution of cocaine was no less than 20 years nor more
 
 *473
 
 than 60 years at hard labor. The sentences imposed in this matter are not excessive. The trial court took cognizance of the sentencing factors set forth in La. C. Or. P. art. 894.1. The court noted that it considered the defendant’s past criminal record, the likelihood that he would commit another crime if given a suspended sentence or probation, the fact that a lesser sentence would deprecate the seriousness of the offense, and the fact that this offense concerned the distribution of controlled dangerous substances. The court considered the defendant’s extensive criminal history, his prior convictions, and his failure to refrain from further criminal activity.
 

 The six counts were separate offenses committed on different days. The trial court could have sentenced the defendant consecutively, but gave him a great benefit in ordering that the sentences for all counts be served concurrently.
 

 The sentences imposed do not shock the sense of justice. The sentence of 45 years at hard labor on each count of distribution of cocaine falls approximately in the middle of the sentencing range. Given the | ^defendant’s criminal history and his repeated activity in selling illegal drugs, the sentences are not excessive.
 

 INDETERMINATE SENTENCE
 

 The defendant argues that the trial court erred in imposing an indeterminate sentence in this case. He claims that at the sentencing, the trial court ordered him to serve 45 years at hard labor on each count of distribution of cocaine, without benefit of parole, probation, or suspension of sentence, and ordered that the sentences be served concurrently. The defendant contends that the trial court did not delineate which of the six counts of distribution of cocaine was the subject of enhancement pursuant to the habitual offender status of the defendant. He urges that if a court fails to impose a sentence for each conviction of two or more convictions or fails to specify which of the sentences is being enhanced under the habitual offender statute, the sentence or sentences should be set aside and remanded for resentencing. This argument is without merit.
 

 If a defendant who had been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence. La. C. Cr. P. art. 879. La. R.S. 15:529.1 exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. There is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode.
 
 State v. Shaw,
 
 2006-2467 (La.11/27/07), 969 So.2d 1283. See also
 
 State v. Montgomery,
 
 44,877 (La.App.2d Cir.1/27/10), 31 So.3d 560;
 
 writ denied,
 
 2010-0494 (La.9/24/10), 45 So.3d 1073.
 

 This case is distinguishable from
 
 State v. Mayweather,
 
 28,271 (La.App.2d Cir.6/26/96), 677 So.2d 594, cited by the defendant. In
 
 Mayweather,
 
 a defendant was found guilty of two counts of armed robbery, was adjudicated a habitual offender, and was given one sentence to serve 60 years at hard labor, without benefit of parole, probation, or suspension of sentence. The trial court did not specify whether the sentence was for either or both armed robbery counts. This court found that, under those circumstances, the sentence was indeterminate. In the present case, the state asked the trial court to enhance each of the defendant’s six convictions for distribution of cocaine under the
 
 *474
 
 habitual offender statute. The trial court, in imposing sentence, clearly imposed the habitual offender enhancement to each of the six convictions. Therefore, the sentence in this case complied with La. C. Cr. P. art. 879.
 

 PAROLE ELIGIBILITY
 

 We note that the concurrent sentences of 45 years at hard labor for each of the six counts of distribution of cocaine were ordered by the trial court to be served without benefit of parole, probation, or suspension of sentence. We amend the sentences to provide that only the first two years of the sentences are to be served without benefit of parole.
 

 La. R.S. 15:529.1(G) provides that any sentence imposed under the provisions of this section shall be at hard labor without benefit of probation or suspension of sentence. Regarding the imposition of a sentence without [^benefit of parole, the conditions imposed on the sentence are those called for in the sentencing provisions for the underlying felony offense. See
 
 State v. Bruins,
 
 407 So.2d 685 (La.1981);
 
 State v. Richard,
 
 550 So.2d 300 (La.App. 2d Cir.1989). The sentence conditions required by La. R.S. 15:529.1(G) are additions to, rather than replacements of, those conditions required by the sentencing provisions for the underlying of fense.
 
 State v. Robinson,
 
 46,330 (La.App.2d Cir.2/18/11), 54 So.3d 1292. See also
 
 State v. Thomas,
 
 42,322 (La.App.2d Cir.8/15/07), 962 So.2d 1119,
 
 unit denied,
 
 2008-0316 (La.10/24/08), 992 So.2d 1031;
 
 State v. Hollingsworth,
 
 42,317 (La.App.2d Cir.8/15/07), 962 So.2d 1183;
 
 State v. Brown,
 
 37,736 (La.App.2d Cir.3/12/04), 868 So.2d 289,
 
 writ denied,
 
 2004-2216 (La.6/3/05), 903 So.2d 445;
 
 State v. Holloway,
 
 37,021 (La.App.2d Cir.5/16/03), 847 So.2d 200,
 
 writs denied,
 
 2003-1720 (La.12/19/03), 861 So.2d 558, 2003-1929 (La.12/19/03), 861 So.2d 560;
 
 State v. Shields,
 
 614 So.2d 1279 (La.App. 2d Cir. 1993),
 
 writ denied,
 
 620 So.2d 874 (La.1993).
 

 La. R.S. 40:967 provides that only the first two years of a sentence for distribution of cocaine are to be served without benefit of parole, probation, or suspension of sentence. Accordingly, we amend the defendant’s sentences to provide that only the first two years of the sentences are to be served without benefit of parole.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the convictions of the defendant, Jeffrey Keith Thurman, for six counts of distribution of cocaine and his adjudication as a third felony offender. We affirm that portion of 113the sentences ordering that the defendant, pursuant to his adjudication as a third felony offender, serve 45 years in prison at hard labor without benefit of probation or suspension of sentence and that the sentences be served concurrently. We amend the sentences to provide that only the first two years of the sentences are to be served without benefit of parole.
 

 CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED.
 

 APPLICATION FOR REHEARING
 

 Before WILLIAMS, GASKINS, PEATROSS, DREW and MOORE, JJ.
 

 Rehearing denied.
 

 [1]
 

 . The version of the statute in effect at the time of the defendant’s adjudication as a habitual offender is set forth here. The statute was amended in 2010. None of die amendments are relevant to this case and would not make a difference in the sentence.