STONE, J.
The defendant, Troy Hopkins, was convicted of manslaughter pursuant to La. R.S. 14:31, adjudicated as a third-felony offender and sentenced to the mandatory term of life imprisonment without benefits. His conviction and sentence were affirmed on appeal. State v. Hopkins , 34,119 (La. App. 2 Cir. 12/20/00), 774 So.2d 1178. Hopkins filed a motion to correct illegal sentence under State ex rel. Esteen v. State , 16-0949 (La. 1/30/18), 239 So.3d 233. The trial court granted the motion and set the matter for resentencing. Hopkins was resentenced to 65 years at hard labor. Hopkins appeals his sentence. For the following reasons, Hopkins' sentence is affirmed and the matter is remanded for correction of the minutes.
*1228 FACTS
On October 20, 1999, Hopkins was convicted by the jury of the responsive verdict of manslaughter, in violation of La. R.S. 14:31. The following facts are taken from this Court's prior opinion on appeal of Hopkins' conviction and original sentence:
On August 31, 1997, at approximately 3:00 p.m., Defendant shot and killed the victim, Roderick Adger, while on the way to make a drug exchange. Mr. Adger's friend, Amy White, was present during the shooting.
Mr. Adger, who lived with his girlfriend in a house on Lyon Street, contacted Ms. White, who lived in Mr. Adger's home on Malcolm Street, about a half block away. Mr. Adger, disturbing Ms. White's sleep, informed her that Defendant would be arriving at the house on Malcolm Street, at which time Ms. White was to go to Mr. Adger's residence on Lyon Street and inform him of Defendant's arrival. Ms. White informed Mr. Adger of Defendant's arrival at the Lyon Street address, at which time Mr. Adger armed himself with his .38 caliber pistol hidden under his shirt and sagged pants.
Himon Jones, Jr., Mr. Adger's first cousin, had just arrived at Mr. Adger's Lyon Street address to deliver a vehicle belonging to Mr. Adger's girlfriend, Philea, on which he had been making repairs. Mr. Adger, accompanied by Ms. White and Mr. Jones, drove the vehicle to the Malcolm Street address to meet Defendant. While at her home, Ms. White secured her nine-millimeter pistol in a brown paper bag to carry with her on the drug transaction.
Mr. Adger, Ms. White, Mr. Jones and Defendant then left the Malcolm Street address together in the vehicle. Seated in the four-door vehicle were Mr. Adger in the driver's seat, Defendant in the front passenger seat, and Mr. Jones and Ms. White in the backseat. Mr. Jones testified that, after having traveled only a short distance, he noticed that Defendant was pointing a pistol at him. Mr. Jones then jumped from the moving vehicle. Startled by Mr. Jones' immediate departure from the vehicle, Ms. White looked up to discover that Defendant was pointing a pistol at the side of Mr. Adger's head. Defendant demanded whatever drugs and money Mr. Adger possessed, which Mr. Adger turned over. As the remaining trio drove down Wallace Street toward Midway Street, only a few blocks from the initial point of departure, Defendant climbed between the bucket seats of the car to the back seat, keeping his pistol pointed at Mr. Adger. Ms. White requested that she and Mr. Adger be released since Defendant had what he wanted.
Once the vehicle was stopped at the intersection of Wallace Street and Midway Street, Defendant agreed to release Ms. White; however, Ms. White did not want to leave the vehicle without Mr. Adger. Ms. White exited the vehicle and waited near the trunk of the vehicle on the passenger side, disregarding Defendant's request that she walk away. Defendant told Ms. White to open the door on the front passenger side for Mr. Adger and to then move back. Mr. Adger, who was wearing a seat belt, was told to slide out of the unfastened seat belt. Mr. Adger managed to slide across to the passenger side and exit the vehicle. Suddenly, before Mr. Adger could completely turn toward the vehicle or utter Ms. White's name, Ms. White stated that she witnessed Defendant fire his gun at Mr. Adger, wounding him in the right side of his chest. Mr. Adger then returned fire in the direction of Defendant.
Ms. White testified that she did not see Mr. Adger with his gun out at the time Defendant first fired. She further *1229 stated that Mr. Adger, after being wounded, said, "Amy, serve him." This meant that Mr. Adger wanted Ms. White to retaliate. Ms. White fired all of her ammunition in the direction of Defendant and then fled the scene, running approximately four blocks to her house on Malcolm Street. After returning fire, Defendant drove off in the vehicle with the stolen drugs. The vehicle was later found totally destroyed by fire. Ms. White returned to the scene several minutes later and found Mr. Adger a few houses away from the scene of the shooting on Michel Street, fatally wounded ; Mr. Adger later died at the hospital from the gunshot wound to the right side of his chest. The bullet entered the right side of Mr. Adger's chest and traveled in a descending lateral direction damaging his right lung, diaphragm, stomach and liver.
Soon after the shoot-out, officers arrived to process the crime scene. Ms. White was questioned briefly, but left the crime scene to check on Mr. Adger at the hospital. The following day, Ms. White was shown a photographic lineup and immediately identified Defendant as the person who shot Mr. Adger. Mr. Jones was shown the same photographic lineup on September 3, 1997, and also immediately identified Defendant as the person who shot Mr. Adger. Defendant was arrested later that night and was eventually indicted by a grand jury for first degree murder. The indictment was later amended, however; and Defendant was indicted for second degree murder. State v. Hopkins, supra.
* * *
Hopkins was adjudicated a third-felony offender based on prior convictions of simple robbery and unauthorized entry of an inhabited dwelling. Hopkins was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence.
On May 22, 2018, Hopkins filed a motion to correct illegal sentence pursuant to Esteen, supra. The trial court granted the motion, finding that Hopkins was one of the defendants whom the ameliorative changes in the habitual offender law was designed to benefit. In a written ruling, the trial court calculated the sentencing range for Hopkins under the ameliorative provisions to be 26.6 years to 80 years. At resentencing on July 25, 2018, the trial court imposed a midrange sentence of 65 years at hard labor. A motion to reconsider sentence was denied. This appeal followed.
DISCUSSION
In two assignments of error, Hopkins' appellate counsel challenges his sentence as excessive and argues that it is not particularly tailored to his circumstances and the case. Appellate counsel provides a brief argument that the sentence is excessive as the trial court "considered only the facts of the case prior to imposing sentence, making no effort to determine who Troy Hopkins is in the larger scheme of things."
Pro se, Hopkins challenges the trial court's calculation of the appropriate sentencing range under the ameliorative provisions and asserts that the trial court failed to consider all appropriate factors before imposing sentence. As all assignments of error concern the sentence, we will address them together as follows.
Calculation of sentencing range
In 2001, the legislature amended the Habitual Offender Law. Pursuant to La. R.S. 15:529.1(A)(1)(b)(i), as amended, a third-felony offender shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. La. R.S. 15:529.1(A)(1)(b)(ii) no longer authorized a *1230 life sentence for a third-felony offender unless the third felony and the two prior felonies were either (1) felonies defined as a crime of violence under La. R.S. 14:2(13) ; (2) a sex offense as defined in La. R.S. 15:540 et seq. when the victim is under the age of 18 at the time of the offense; or (3) as a violation of the Uniform Controlled Dangerous Substance Law punishable for 10 years or more or any other crime punishable by imprisonment for 12 years or more. However, the pre-2001 version required imposition of a life sentence for a third-felony offender if the third felony or any of the prior felony offenses fell into the categories listed above.
La. R.S. 15:529.1(G) states that any sentence imposed under the habitual offender provisions shall be at hard labor without benefit of probation or suspension of sentence. Regarding the imposition of a habitual offender sentence without benefit of parole, the conditions imposed on the sentence are determined by the sentencing provisions for the underlying offense. State v. Sullivan, 51,180 (La. App. 2 Cir. 2/15/17), 216 So.3d 175 ; State v. Thurman , 46,391 (La. App. 2 Cir. 6/22/11), 71 So.3d 468, writ denied , 11-1868 (La. 2/3/12), 79 So.3d 1025.
Excessive Sentence
Appellate courts utilize a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 16-0959 (La. 5/1/17), 219 So.3d 332.
The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , supra.
The important elements which should be considered are the defendant's personal history (e.g., age, family ties, marital status, health, employment record, etc.), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry , supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry , supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 07-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 01-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra.
The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Allen , 49,642 (La. App. 2 Cir. 2/26/15), 162 So.3d 519, writ *1231 denied , 15-0608 (La. 1/25/16), 184 So.3d 1289.
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Allen , supra. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Jackson , 48,534 (La. App. 2 Cir. 1/15/14), 130 So.3d 993.
In the matter sub judice , Hopkins, pro se, challenges the trial court's calculation of his sentencing range under the ameliorative sentencing provisions. The trial court properly calculated Hopkins' sentencing exposure in its written ruling on the motion to correct illegal sentence. Hopkins' current offense of manslaughter is defined as a crime of violence under La. R.S. 14:2(13). Hopkins' first predicate felony was simple robbery which is also a qualifying crime of violence. However, his second predicate felony was unauthorized entry of an inhabited dwelling, which is not a qualifying felony. Since all three of his felonies do not meet the statutory requirements for a life sentence, La. R.S. 15:529.1(A)(1)(b)(ii), the trial court properly sentenced Hopkins under La. R.S. 15:529.1(A)(1)(b)(i), the 2001 amended version. Two thirds of 40 years is 26.67 years; twice 40 years is 80 years. Thus, Hopkins' sentencing exposure under the more lenient provisions to which he was entitled was not less than 26 years, nor more than 80 years. His sentence imposed of 65 years falls mid-range.
Moreover, we find that the midrange sentence of 65 years is not excessive. At resentencing, the trial court noted that it had obtained the original case file and had reviewed all of the police reports and written statements. The trial court recited the pertinent facts and found that (1) there is an undue risk that during the period of a suspended sentence or probation, Hopkins would commit another crime, (2) Hopkins is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution, and (3) a lesser sentence would deprecate the seriousness of the offense. See La. C.Cr.P. art. 894.1.
As aggravating factors, the court found that Hopkins' behavior manifested deliberate cruelty to the victim and that he knowingly created a risk of death or great bodily injury to more than one person. Characterizing this incident as basically a neighborhood shootout, the trial court noted that many people could have been harmed since actual violence, with a weapon, was used resulting in death and causing significant harm to the victim's family. The trial court stated that there were not any applicable mitigating factors, except it was "somewhat mitigating" that Mr. Adger may have also been armed, which would support the responsive verdict of manslaughter rather than second degree murder.
Thus, we find that the trial court adequately complied with La. C.Cr.P. art. 894.1 and this midrange sentence of 65 years for the shooting death of Mr. Adger in a residential area over a drug deal gone awry does not shock the sense of justice.
Error Patent
The record does reveal one error patent - the trial court failed to specify that Hopkins' sentence is to be served without probation or suspension of sentence. La. R.S. 15:529.1(G) states that any sentence imposed under the habitual offender provisions shall be at hard labor without benefit of probation or suspension of sentence. This provision is self-implementing and requires no action by this Court.
However, while the minutes reflect that the sentence is "subject to the conditions *1232 provided by law," because the Department of Corrections relies on the minutes for calculation of time, we remand this matter for specification in the minutes that Hopkins' sentence is to be served without probation or suspension of sentence.
CONCLUSION
For the foregoing reasons, the defendant's sentence is affirmed and the matter is remanded for correction of the minutes.
SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF THE MINUTES.