Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,329-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BILLY R. MEADOWS, JR.                       Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Franklin, Louisiana
Trial Court No. 2017-172F

Honorable John Clay Hamilton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Carey J. Ellis, III

JOHN MCINTOSH LANCASTER               Counsel for Appellee
District Attorney

CAROLINE HEMPHILL
AMANDA MICHELE WILKINS
Assistant District Attorneys

* * * * *

Before STONE, COX, and McCALLUM, JJ.

**COX, J.**

This criminal appeal arises from the Fifth Judicial District Court, Richland Parish, Louisiana. The defendant, Billy R. Meadows, Jr., was initially charged with second degree murder. After a plea agreement, Meadows pled guilty to second degree cruelty to juveniles, in violation of La. R.S. 14:93.2.3. The district court sentenced Meadows to 40 years at hard labor. After an appeal, this Court affirmed both his conviction and sentence. The district court then adjudicated Meadows a fourth-felony habitual offender and sentenced him to the statutorily mandated sentence of life imprisonment without the benefit of probation, parole, or suspension of sentenced. Meadows then appealed his sentence. This Court determined that the evidence was insufficient to prove that Meadows' offense of attempted possession of a firearm by a convicted felon fell within the 10-year cleansing period for Meadows' prior felonies. The adjudication was reversed, the sentence was vacated, and the matter was remanded to the trial court. Meadows was again adjudicated a fourth-felony habitual offender and sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. Meadows now appeals the excessiveness of his sentence. For the following reasons, we affirm Meadows' sentence.

## FACTS

The facts and procedural history have been adopted from *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 2018-0259 (La. 10/29/18), 254 So. 3d 1208.

> On July 21, 2015, the defendant's girlfriend left her young son in the defendant's care while she went to work. Several hours later, the defendant called and told her to return to the home they shared due to an emergency. She found the child cool to the touch, with blue lips and his eyes rolled back. She called

911, and the child was transported to the emergency room where he was pronounced dead. The child's stomach appeared swollen, and he had "visual bruises" on his body. Further examination revealed a discharge from his anal cavity. Upon further examination of the child's anus, the doctor found evidence of sexual molestation. The defendant later gave differing versions to law enforcement officers of what transpired after the child's mother left for work. These included accounts wherein the child fell off a "pot" (apparently a commode or potty chair) or down the stairs, and that he had left the child alone in the residence only to return and find him unconscious under a coffee table. Thinking that the child was asleep, the defendant admitted kicking him. The defendant also provided inconsistent accounts of hitting the child with a belt in his genital area.

On August 10, 2015, the defendant was charged by grand jury indictment with the second degree murder of the child, during the perpetration or attempted perpetration of cruelty to juveniles. On January 10, 2017, he pled guilty to the crime of second degree cruelty to juveniles in exchange for the dismissal of a misdemeanor charge of simple criminal damage to property. The state also agreed that the sentence would run concurrent with any other sentence previously imposed and that the defendant would be allowed credit for time served from the date of his arrest. Because of the sensitive nature of the crime, the state and the defense agreed to offer the investigative case report as the factual basis for the plea. That report outlined in great detail the facts recited above. After accepting the plea, the trial court ordered a presentence investigation (PSI) report.

On March 7, 2017, the defendant received the maximum sentence for second degree cruelty to juveniles, 40 years at hard labor. The trial court ordered that the sentence be concurrent with any other sentence, with credit for time served. Prior to imposing sentence, the trial court fully considered the contents of the PSI report, which had been reviewed by both the state and the defense. The trial court reviewed the facts of the matter, as well as the 34–year–old defendant's personal and educational history, noting that he dropped out of school in the ninth grade at age 16, was incarcerated at about age 18, and worked odd jobs. The defendant had four small children with three different women, but had never been married.

The trial court considered statements from the child's mother, expressing the anger and mental suffering she endured because of the loss of her child, and from the child's grandmother, requesting justice for her grandson. It also took under advisement statements from several law enforcement officers, who requested the maximum sentence due to the severity of the crime.

2

The trial court reviewed the defendant's criminal history, noting that he had no juvenile record, but was a fourth-felony offender. The defendant's felony criminal history included a September 2000 conviction for simple burglary, for which he originally received a suspended six-year sentence; however, his probation was revoked. He also had convictions in November 2001 for possession of a firearm by a convicted felon and simple burglary, for which he received concurrent sentences of 10 years at hard labor. Regarding these offenses, the trial court noted that the defendant was originally charged with aggravated burglary, a crime of violence, after he broke into a residence and stole money and guns. The defendant had a 2013 conviction for attempted possession of a firearm by a convicted felon and received a five-year hard labor sentence. The trial court also considered three misdemeanor convictions in 2011 and 2012.

The trial court considered the defendant's failure to complete probation or parole at any time due to his continued commission of crimes, noting that he was on parole at the time of the present offense.

The trial court reviewed La. C. Cr. P. art. 894.1, and in mitigation, considered the defendant's age, lack of prior convictions involving juveniles, and enrollment in a substance abuse program and a Bible ministry study. It also considered the defendant's children; however, it noted that there was no evidence that he paid them any support. The trial court also reviewed statements by the defendant's mother and sister, who requested leniency in sentencing, and a letter and petition submitted on behalf of the defendant by a family member, which had 100 names listed on it.

As aggravating factors, the trial court noted the defendant's criminal history. The trial court considered that the defendant received a substantial benefit from the plea agreement, which reduced the charge from second degree murder to second degree cruelty to juveniles. The court observed that the defendant never worked regularly or contributed to society and concluded that his conduct manifested deliberate cruelty to a two-year-old vulnerable child who was incapable of resistance. The court classified the offense as a heinous crime, reciting the injuries inflicted upon the child. They included blunt force trauma to the child's head, tears to his colon and anal area, and internal bleeding and internal injuries as a result of an object in the child's anal area. The trial court observed that the instant offense was "one of the worst" crimes it had ever seen, and it considered the pain the child must have suffered. The court also recognized the psychological damage caused to the mother, who could not eat or sleep and was in constant mental pain since the death of her child.

The trial court concluded that the defendant was in need of correctional treatment in a custodial environment that could be provided effectively by his commitment to an institution, that he would commit another crime if not incarcerated, and that a lesser sentence would deprecate the seriousness of the offense. Ultimately, the trial court determined that the defendant deserved the maximum sentence of 40 years at hard labor.

The defendant filed a motion to reconsider sentence arguing that the trial court failed to give sufficient weight to the fact that he had no prior convictions involving juveniles or crimes of violence, had voluntarily enrolled in substance abuse treatment and various Bible study programs, and expressed remorse for what happened to the victim. At the hearing on the motion to reconsider sentence, the defendant also argued that the trial court failed to give sufficient weight to his employment, his attempt to get a GED, and the list of individuals who supported him. He further requested that the trial court give no weight to any allegations by individuals that were not supported by the autopsy report. The trial court stated that it had already considered all of the above-noted facts in sentencing. Finding that the defendant's "horrible crime" which resulted in the death of the two-year old victim warranted the maximum sentence, it denied the motion to reconsider sentence.

On March 15, 2017, the State filed a habitual offender bill of information against Meadows alleging the following seven felony convictions:

• September 27, 2000, 2000–427F, Fifth JDC, Franklin Parish, Louisiana: Simple Burglary;

• September 27, 2000, 2000–426F, Fifth JDC, Franklin Parish, Louisiana: Unauthorized Use of a Motor Vehicle;

• November 3, 2000, 2000–540F, Fifth JDC, Franklin Parish, Louisiana: Simple Burglary;

• November 30, 2001, 2001–79F, Fifth JDC, Franklin Parish, Louisiana: Simple Burglary;

• November 30, 2001, 2001–801F, Fifth JDC, Franklin Parish, Louisiana: Possession of Firearm by a Convicted Felon;

• January 29, 2013, 2012–591F, Fifth JDC, Franklin Parish, Louisiana: Attempted Possession of a Firearm by a Convicted Felon; and

4

• January 10, 2017, 2015–402F, Fifth JDC, Franklin Parish, Louisiana: Second Degree Cruelty to a Juvenile.

Meadows pled not guilty to the habitual offender charges and on July 11, 2017, the district court held an adjudication hearing to determine if Meadows was a habitual offender. At the adjudication hearing, the State called former prosecutor Johnny Boothe as its sole witness. Booth testified that he remembered being the prosecutor in each of the predicate felonies. He specifically identified Meadows as the person he convicted on each charge listed in the habitual offender bill of information.

The State used Boothe's testimony to introduce five exhibits, each of which consisted of a bill of information and guilty plea transcript relative to the predicate convictions. Based on the evidence, the trial court found Meadows to have been convicted of six prior felonies and that none of the convictions had been cleansed. The district court sentenced Meadows to life imprisonment without benefit of probation or suspension of sentence.

In April 2018, this Court held that the State had failed to produce evidence from which a trier of fact could deduce that the cleansing period had not expired. Therefore, this Court reversed Meadows' adjudication as a fourth-felony offender, vacated his sentence, and remanded for further proceedings. *See*, *State v. Meadows*, 51,980 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1018.

On November 20, 2018, Meadows filed a written objection and "Motion To Depart From Mandatory Minimum Sentence Pursuant To LA. R.S. 15:529.1 And Incorporated Memorandum." In his motion, Meadows cited case law indicating that the sentencing court could deviate from a mandatory sentence provided in the habitual offender law. However,

Meadows did not analogize this law to his specific case. The State opposed Meadows' motion and argued that Meadows failed to meet his burden of proof.

On May 15, 2019, the district court held a second habitual adjudication hearing. At the hearing, the judge took judicial notice of the previous adjudication hearing as well as the record in that proceeding. The State sought to prove that Meadows' previous felony convictions had not been cleansed and that he was a habitual offender. In order to do so, the State called Doug McClellan, a Department of Corrections probation and parole officer who supervised Meadows in Franklin Parish, intermittently from 2000-2017 and/or 2018. McClellan testified that Meadows' supervision ended when his parole was revoked as a result of his conviction for second degree cruelty to juveniles. McClellan correctly identified Meadows as the person he supervised.

McClellan testified that he conducted a presentence investigation in 2017 on Meadows wherein he reviewed Meadows' complete criminal history. McClellan explained that the Department of Corrections' Probation and Parole Office utilizes a system called CAJEN to determine offenders' date of conviction, docket number, and closure dates. McClellan further explained closure dates ("closure" indicates the date that the amount of time that was originally given to an offender is completed) may be extended upon revocation. After a revocation, the offender is remanded to the Department of Corrections to serve the original hard labor sentence. When the offender is released he or she begins parole under the same original docket number. Should the offender again be revoked, he would repeat the process until the original sentence was satisfied. McClellan noted that it was common for an

offender to receive a five-year sentence and not have his supervision terminated until 12-13 years later.

The state used McClellan's testimony to introduce seven exhibits, six of which consisted of bills of information and guilty plea transcripts relating to the respective predicate conviction. The seventh exhibit showed each predicate's supervision termination and closure date. The testimony elicited from the exhibits was:

- S-1, Docket No. 2000-426F, Simple Burglary committed on or about July 6, 2000, guilty plea on September 27, 2000, sentenced to six years at hard labor, suspended five years active supervised probation, supervision terminated October 4, 2012.

- S-2, Docket No. 2000-427F, Unauthorized Use of a Motor Vehicle committed on or about July 6, 2000, guilty plea on September 27, 2000, sentenced to six years at hard labor suspended, five years active supervised probation, supervision terminated October 4, 2012.

- S-3, Docket No. 2000-540F, Simple Burglary (2 counts) committed on or about August 22, 2000 and August 23, 2000, guilty plea to one count on November 3, 2000, sentenced to six years hard labor, consecutive with previous sentences, suspended, five years active supervised probation, concurrent with previous probation, supervision terminated on August 5, 2015.

- S-4, Docket No. 2001-81F, Possession of a Firearm by a Convicted Felon committed on or about November 27, 2000, guilty plea, on November 30, 2001, sentenced to 10 years hard labor without benefit of probation, parole, or suspension of sentence, concurrent with any other sentences, supervision terminated on October 4, 2012.

- S-5, Docket No. 2001-81F, Possession of a Firearm by a Convicted Felon committed on or about November 27, 2000, guilty plea on November 30, 2001, sentenced to 10 years hard labor without benefit of probation, parole, or suspension of sentence, concurrent with any other sentences, supervision terminated on October 4, 2012.

- S-6, Docket No. 2012-591F, Attempted Possession of a Firearm by a Convicted Felon committed on or about May 31, 2012, guilty plea on January 29, 2013, sentenced to five years hard labor, concurrent with any other sentences, supervision terminated on May 27, 2017.

7

McClellan also testified that Meadows pled guilty to the present offense of second-degree cruelty to juveniles on January 10, 2017.

On July 17, 2019, Meadows was sentenced under the Habitual Offender Statute as a fifth felony offender. The district court recited its reasons and first noted that the State provided sufficient evidence to establish that Meadows was the person who was convicted of the prior felony offenses listed in the habitual offender bill of information.

With regards to the cleansing period, the district court concluded that the State successfully proved that the 10-year cleansing period had not elapsed at the time of Meadows' conviction of cruelty to juveniles. The district court first noted that for purposes of adjudication as a habitual offender, the September 2000 convictions of simple burglary and unauthorized use of a motor vehicle qualified as one felony conviction, and that the felonies were not discharged from supervision until October 4, 2012. The district court then found that Meadows' November 3, 2000, conviction of simple burglary qualified as his second felony offense. He was not discharged from supervision until August 5, 2015, on that charge. Next, Meadows' November 30, 2001, convictions of simple burglary and possession of a firearm by a convicted felon qualified as his third felony conviction. He was not discharged from this conviction until October 4, 2012. Then, Meadows' conviction for attempted possession of a firearm by a convicted felon qualified as his fourth conviction, for which he was not discharged from supervision until May 27, 2017. Finally, Meadows was convicted of second degree cruelty to juveniles on January 10, 2017. Accordingly, the district court found that Meadows was a fifth-felony offender. The court explained that the underlying offense of second degree

cruelty to juveniles is a crime of violence and that three of the prior convictions of simple burglary carried maximum sentences of 12 years or more. Therefore, Meadows' previous sentence was vacated and he was sentenced to life without the benefit of parole, probation, or suspension of sentence.

The court also denied Meadows' motion for a downward departure, ruling that sentencing guidelines do not allow for any downward departure as the sentence is mandatory. Meadows objected and this appeal ensued.

## DISCUSSION

Meadows argues that the district court imposed an excessive sentence that serves no legitimate purpose. He further contends that the district court did not consider any mitigating factors pursuant to La. C. Cr. Pr. art. 894.1. Meadows urges that the district court did not consider the presentence investigation report or statements given by the deceased child's mother and sister as well as a letter requesting leniency for him in which over 100 people signed. Meadows believes that his time in a bible study and substance abuse program warrant a lesser sentence. Additionally, Meadows states that a life incarceration would be a hardship on his family and children. He also believes that he has shown remorse. It is worth noting that Meadows does not argue that his offenses have been cleansed or that the State did not prove that he committed each of the convictions.

The State contends that the district court found that the State had reestablished with more than sufficient evidence that "this defendant was the exact same defendant who was convicted of the prior felony offenses listed in the Habitual Offender Bill of Information." Additionally, the State argues that it properly showed that the ten-year cleansing period was still in effect

9

by 2015 and that none of Meadows' previous convictions had been cleansed. The State urges that Meadows failed to show by clear and convincing evidence why the district court should have deviated from the mandatory sentence.

La. R.S. 15:529.1 exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. *State v. Allen*, 50,869 (La. App. 2 Cir. 9/28/16), 206 So. 3d 1093, *writ denied*, 16-2046 (La. 9/15/17), 225 So. 3d 484; *State v. Thurman*, 46,391 (La. App. 2 Cir. 6/22/11), 71 So. 3d 468, *writ denied*, 11-1868 (La. 2/3/12), 79 So. 3d 1025. La. R.S. 15:529.1(A)(4) sets forth the sentence for fourth or subsequent felony offenders when, upon a first conviction, the offense would be punishable by imprisonment for any term less than natural life. Specifically, La. R.S. 15:529.1(A)(4)(b) at the time of Meadows' conviction stated:

> If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years of more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Since the habitual offender law is constitutional in its entirety, the minimum sentence it imposes upon recidivists are also presumed to be constitutional. *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So. 2d 672; *State v. Burks*, 47,587(La. App. 2d Cir. 1/16/13), 108 So. 3d 820, *writ denied*, 2013-0424 (La. 7/31/13), 118 So. 3d 1116; *State v. Gay*, 34,371 (La. App. 2d Cir. 4/4/01), 784 So. 2d 714.

10

A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. *Johnson*, *supra*; *Burks, supra*.

Departures from mandatory minimum sentences by their nature are exceedingly rare. The classes of exceptional offenders for whom presumptively constitutional mandatory sentences are nevertheless excessive as applied to them, are exceedingly narrow. *State v. Noble*, 12-1923 (La. 4/19/13), 114 So. 3d 500. To overcome the presumption that a mandatory penalty prescribed by the legislature is constitutional as applied to a particular offender, a trial court must make two findings on the record. First, the judge must find clear and convincing evidence that the offender is exceptional, "which in this context means that because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." *Johnson, supra*. Second, because a trial judge "is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances," but "must sentence the defendant to the longest sentence which is not constitutionally excessive," the judge must "articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution." *Johnson, supra*

Typically, in reviewing sentence for excessiveness, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. Pr. art. 894.1. *State v. Turner*, 51,888 (La. App. 2 Cir. 2/28/18), 246 So. 3d 695. However, where there is a mandatory sentence, there is no need for the trial court to justify, under Article 894.1, a sentence that it is legally required to impose. *State v. Thomas*, 41,734 (La. App. 2 Cir. 1/24/07), 948 So. 2d 1151, *writ denied*, 07-0401 (La. 10/12/07), 965 So. 2d 396; *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/09/06), 941 So. 2d 35.

Second, the appellate court must determine whether the sentence is constitutionally excessive. Constitutional review is decided upon whether a sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. *State v. Lobato*, 603 So. 2d 739 (La. 1992); *State v. Ford*, 52,949 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1252; *State v. Jones*, 52,672 (La. App. 2 Cir. 5/22/19), 273 So. 3d 585. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *Ford, supra*; *Jones, supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *Ford, supra; Jones, supra; State v. Little*, 50,776 (La. App. 2 Cir. 8/10/16), 200 So. 3d 400, *writ denied*, 16-1664 (La. 6/16/17), 219 So. 3d 341.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7; *Turner, supra*; *State v. Brown*, 51,352 (La. App. 2 Cir. 5/2/17), 223 So. 3d 88, *writ denied*, 2017-1154 (La. 5/11/18), 241 So. 3d 1013. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Turner, supra*; *Brown, supra*.

Here, Meadows believes that the district court erred in not considering mitigating factors pursuant to La. C. Cr. Pr. art. 894.1. However, given that Meadows' life sentence was a mandatory minimum, the district court was not required to justify a sentence it was legally required to impose. Furthermore, Meadows was resentenced on remand from this Court after this Court determined that evidence presented at the initial habitual offender hearing did not sufficiently show all of the predicate felony offenses had not been cleansed. In rendering its instructions, this Court cited *State v. Roland*, 49,660 (La. App. 2 Cir. 2/27/15), 162 So. 3d 558, srit denied, 15-0596 (La. 2/19/16), 186 So.3d 1174, which states, "on remand in habitual offender proceedings, another habitual offender hearing presenting evidence to readjudicate is not necessarily required... a court may take judicial cognizance of any prior preceding which was a part of the same case it had previously tried." The district court was not required to conduct a full

13

evidentiary hearing, but instead could take judicial cognizance of Meadows previous sentencing hearing.

In Meadows' initial appeal, this Court upheld Meadows' 40-year sentence, ruling that it did not violate the Louisiana Constitution's prohibition of excessive sentences. The opinion noted that the trial court adequately complied with La. C. Cr. P. art. 894.1. *See, Meadows I, supra.* Therefore, due to judicial cognizance, the district court was aware of any and all mitigating factors that Meadows raised and the district court properly considered La. C. Cr. P. art. 894.1 prior to sentencing.

Additionally, Meadows believes that he was entitled to a downward departure from sentencing. However, Meadows has failed to produce clear and convincing evidence why the court should depart from the statutorily mandated sentence. The evidence showed that a two-year-old child was killed under horrific circumstances. The fact that Meadows has shown remorse for his crimes, or that family members have written letters in his support, do not outweigh the severity of his offense. The sentence is not disproportionate nor does it shock the sense of justice. Given that the punishment was not constitutionally excessive, the district court did not abuse its discretion by sentencing Meadows to this mandatory sentence.

Finally, given that the previous appeal of the case was remanded for the purpose of proving that the previous convictions had not been cleansed, it is worth mentioning that the State adequately proved its case regarding Meadows' habitual offender status. The cleansing period at the time of the commission of the underlying offenses was 10 years. La. R.S. 15:529.1(C). As testified to by Officer McClellan, Meadows first received felony convictions on September 27, 2000, for simple burglary and unauthorized

14

use of a motor vehicle. Given that these offenses took place prior to October 19, 2004, and on the same day, they are counted as one conviction for the purposes of the habitual offender law. Meadows received a six-year hard labor sentence that was suspended, and he received five years of probation. Before the cleansing period could begin to run, on November 3, 2000, Meadows was convicted of simple burglary which qualified as his second felony conviction. Meadows received another six-year hard labor sentence that was suspended. Meadows was then placed on probation for five years. The sentence was to run consecutively with the previous sentence.

On November 30, 2001, Meadows was again convicted of simple burglary (as well as possession of a firearm by a convicted felon) which qualified as his third felony conviction. Only one year passed since Meadows' previous conviction. Thus, the cleansing period had not begun to run. For those convictions, Meadows received two 10-year hard labor sentences. The sentences were ordered to be served concurrently with the previous sentences.

Meadows received another conviction on January 29, 2013, for attempted possession of a firearm by a convicted felon. Over 11 years had passed since his November 2001 conviction. However, evidence showed that Meadows was not discharged from his conviction on November 30, 2001, until October 4, 2012, less than one year before the January 2013 conviction. Furthermore, he was not discharged from his conviction on the September 27, 2000, charges until October 4, 2012. Supervision for his simple burglary conviction in November of 2000 did not terminate until August 5, 2015.

15

Accordingly, the State showed that the 10-year cleansing period was repeatedly interrupted. As such, the district court properly found that Meadows is a fifth-felony offender. Given that Meadows' second degree cruelty to juveniles conviction is a crime of violence, and his simple burglary convictions carry penalties of 12 years or more, the district court was correct in sentencing Meadows to the statutorily mandated sentence of life imprisonment without the benefit of probation, parole, or suspension of sentence.

## CONCLUSION

For the foregoing reasons, we affirm Meadows' sentence.

**AFFIRMED.**